IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

WILLIAM BURTON,         )
         )
       Petitioner,      )
         )
   v.        )   C.A. No. 19-1475 (MN)
         )
ROBERT MAY, Warden, and    )
ATTORNEY GENERAL OF THE STATE   )
OF DELAWARE,       )
         )
      Defendant.    )

**<u>MEMORANDUM OPINION</u>**


Christopher S. Koyste, Esquire – Attorney for Petitioner.

Kathryn J. Garrison, Deputy Attorney General, Delaware Department of Justice, Wilmington, DE – Attorney for Respondents.


October 27, 2022
Wilmington, Delaware

*Maryellen Noreika*

NOREIKA, U.S. DISTRICT JUDGE

Pending before the Court is a Petition and Amended Petition for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254 ("Petition") filed by Petitioner William Burton ("Petitioner"). (D.I. 2; D.I. 8).  The State filed an Answer in opposition, to which Petitioner filed a Reply. (D.I. 25; D.I. 26).  For the reasons discussed, the Court will deny the Petition.

I.   **BACKGROUND**

> On January 31, 2013 following up on a tip from a past-proven reliable informant an administrative search was conducted in the residence of [Petitioner] who was at the time a Level II probationer and registered sex offender.  The informant stated that an active probationer was selling crack cocaine from his residence.  During the search of [Petitioner's] residence police discovered in his bedroom baggies, a digital scale, a plate with an off-white substance, a razor blade, a grinder, smoking papers, and clear zip-lock bags with a plant like substance consistent in appearance with marijuana.  Police also discovered a clear plastic bag containing a white, powdery substance consistent in appearance with cocaine located in a jacket in [Petitioner's] bedroom closet.  The powdery substance and plant like substance field tested positive for cocaine and marijuana respectively.  The evidence seized was found to have preliminary weights of 1 gram of marijuana and 29 grams of cocaine.

*State v. Burton*, 2018 WL 2077325, at *1 (Del. Super. Ct. Apr. 30, 2018).

On March 18, 2013, a New Castle County grand jury indicted Petitioner for drug dealing, aggravated possession of cocaine, two counts of illegal possession of marijuana, and possession of drug paraphernalia.  (D.I. 17-5 at 7-9).  On May 15, 2003, a forensic chemist with the Office of the Chief Medical Examiner ("OCME") issued a Controlled Substances Laboratory Report stating that the substances tested positive for cocaine (28.45 grams) and marijuana (.93 grams).  (D.I. 22-2 at 33).  In June 2013, Petitioner filed a motion to suppress the drug evidence (D.I. 17-5 at 11-17), which the Superior Court denied after a hearing.  *See State v. Burton*, 2013 WL 4852342, at *4 (Del. Super. Ct. Sept. 9, 2013).  Thereafter, Petitioner waived his right to a jury trial and a

stipulated bench trial was held on September 24, 2013.  (D.I. 17-1 at 4, Entry Nos. 19-20; D.I. 17-12 at 59-62).  At the trial, the State admitted into evidence, without objection, the OCME Lab Report confirming that the substances found in Petitioner's room were cocaine and marijuana.  (D.I. 17-28 at 17, 53).  The Superior Court found Petitioner guilty of all charges.  (D.I. 17-1 at 4, Entry No. 20; D.I. 17-12 at 65).  On December 13, 2013, the Superior Court sentenced Petitioner as a habitual offender to an aggregate life term plus two years.  (D.I. 17-12 at 72-75).  Petitioner appealed.

Meanwhile, in February 2014, the Delaware State Police and the Department of Justice ("DOJ") began an investigation into criminal misconduct occurring in the OCME which revealed, *inter alia*, that OCME employees had been stealing drug evidence.  *See Brown v. State*, 108 A.3d 1201, 1204 (Del. 2015).  Starting in the spring of 2014, the Office of Defense Services ("ODS") filed motions for post-conviction relief pursuant to Delaware Superior Court Criminal Rule 61 on behalf of more than 700 defendants, asserting identical claims for relief arising from issues relating to the evidence scandal in the OCME; namely, that the OCME misconduct constituted impeachment material under *Brady v. Maryland*, 373 U.S. 83 (1963).

On April 30, 2014, while his appeal was pending in the Delaware Supreme Court, the ODS filed a Rule 61 motion on Petitioner's behalf ("ODS Rule 61 motion") based upon the misconduct at the OCME.  (D.I. 17-12 at 81-94).  The Delaware Supreme Court granted Petitioner's request to stay his appeal and remanded the case to the Superior Court to provide Petitioner with an opportunity to file motions to supplement the record and a motion for a new trial.  (D.I. 17-12 at 78).  On January 30, 2015, Petitioner filed a Rule 33 motion for new trial in the Superior Court. (D.I. 17-1 at 7, Entry No. 39).  The Superior Court denied the Rule 33 motion for new trial on December 1, 2015.  (D.I. 17-13 at 138-147).  Petitioner appealed.  On June 8, 2016, the Delaware

Supreme Court affirmed Petitioner's convictions and the denial of his Rule 33 motion for a new trial. *See Burton v. State*, 142 A.3d 504 (Table), 2016 WL 3381847, at *1 (Del. Jun. 8, 2016).

On August 11, 2016, Petitioner filed in the Superior Court *a pro se* Rule 61 motion ("*pro se* Rule 61 motion"). (D.I. 17-1 at 9, Entry No. 53; D.I. 22-8 at 5-8). On September 27, 2016, the Superior Court denied Petitioner's ODS Rule 61 motion that was filed in April 2014. (D.I. 17-1 at 9-10, Entry No. 57; D.I. 22-8 at 9-10). On October 21, 2016, at Petitioner's request, the Superior Court appointed counsel to assist Petitioner with the *pro se* Rule 61 motion he had filed in August 2016. (D.I. 17-1 at 9-10, Entry Nos. 54, 58). Newly appointed Rule 61 counsel filed an amended Rule 61 motion ("Rule 61 motion") on August 17, 2017. (D.I. 17-1 at 11, Entry Nos. 63, 64; D.I. 22-8 at 11-94). The Superior Court denied Petitioner's Rule 61 motion on April 30, 2018. *See Burton*, 2018 WL 2077325, at *5. The Delaware Supreme Court affirmed that decision on December 16, 2018. *See Burton v. State*, 200 A.3d 1206 (Table), 2018 WL 1768652 (Del. Dec. 26, 2018).

## II.   GOVERNING LEGAL PRINCIPLES

### A.   The Antiterrorism and Effective Death Penalty Act of 1996

Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") "to reduce delays in the execution of state and federal criminal sentences . . . and to further the principles of comity, finality, and federalism." *Woodford v. Garceau*, 538 U.S. 202, 206 (2003). Pursuant to AEDPA, a federal court may consider a habeas petition filed by a state prisoner only "on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). AEDPA imposes procedural requirements and standards for analyzing the merits of a habeas petition in order to "prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell v. Cone*, 535 U.S. 685, 693 (2002).

B.     **Standard of Review**

When a state's highest court has adjudicated a federal habeas claim on the merits,[1] the federal court must review the claim under the deferential standard contained in 28 U.S.C. § 2254(d).  Pursuant to 28 U.S.C. § 2254(d), federal habeas relief may only be granted if the state court's decision was "contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States," or the state court's decision was an unreasonable determination of the facts based on the evidence adduced in the state court proceeding.  28 U.S.C. § 2254(d)(1) & (2); *see Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Appel v. Horn*, 250 F.3d 203, 210 (3d Cir. 2001).  The deferential standard of § 2254(d) applies even when a state court's order is unaccompanied by an opinion explaining the reasons relief has been denied.  *See Harrington v. Richter*, 562 U.S. 86, 98-101 (2011).  As explained by the Supreme Court, "it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary."  *Id.* at 99.

A state court decision is "contrary to" clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts."  *Williams*, 529 U.S. at 413.  The mere failure to cite Supreme Court precedent does not require a finding that the decision is contrary to clearly established federal law. *See Early v. Packer*, 537 U.S. 3, 8 (2002).  For instance, a decision may comport with clearly established federal law even if the decision does not demonstrate an awareness of relevant Supreme Court cases, "so long as neither the reasoning nor the result of the state-court decision contradicts

---

[1]     A claim has been "adjudicated on the merits" for the purposes of 28 U.S.C. § 2254(d) if the state court decision finally resolves the claim on the basis of its substance, rather than on a procedural or some other ground.  *See Thomas v. Horn*, 570 F.3d 105, 115 (3d Cir. 2009).

them." *Id*.  In turn, an "unreasonable application" of clearly established federal law occurs when a state court "identifies the correct governing legal principle from the Supreme Court's decisions but unreasonably applies that principle to the facts of a prisoner's case." *Williams*, 529 U.S. at 413; *see also White v. Woodall*, 572 U.S. 415, 426 (2014).

When performing an inquiry under § 2254(d), a federal court must presume that the state court's determinations of factual issues are correct.  *See* 28 U.S.C. § 2254(e)(1); *Appel*, 250 F.3d at 210.  This presumption of correctness applies to both explicit and implicit findings of fact, and is only rebutted by clear and convincing evidence to the contrary.  *See* 28 U.S.C. § 2254(e)(1); *Campbell v. Vaughn*, 209 F.3d 280, 286 (3d Cir. 2000); *Miller-El v. Cockrell*, 537 U.S. 322, 341 (2003) (stating that the clear and convincing standard in § 2254(e)(1) applies to factual issues, whereas the unreasonable application standard of § 2254(d)(2) applies to factual decisions).  State court factual determinations are not unreasonable "merely because the federal habeas court would have reached a different conclusion in the first instance." *Wood v. Allen*, 558 U.S. 290, 301 (2010).

Conversely, if the state's highest court did not adjudicate the merits of a properly presented claim, the claim is reviewed *de novo* instead of under § 2254(d)'s deferential standard.  *See Breakiron v. Horn,* 642 F.3d 126, 131 (3d Cir. 2011); *Lewis v. Horn*, 581 F.3d 92, 100 (3d Cir. 2009).  *De novo* review means that the Court "must exercise its independent judgment when deciding both questions of constitutional law and mixed constitutional questions." *Williams v. Taylor*, 529 U.S. 362, 400 (2000) (Justice O'Connor concurring).  "Regardless of whether a state court reaches the merits of a claim, a federal habeas court must afford a state court's factual findings a presumption of correctness and . . . the presumption applies to factual determinations of state trial and appellate courts." *Lewis*, 581 F.3d at 100 (cleaned up).

### III.   <u>DISCUSSION</u>

Petitioner's timely filed Petition asserts the following three claims: (1) defense counsel violated Petitioner's due process right to a fair trial and provided ineffective assistance by stipulating to the State's evidence without Petitioner's consent (D.I. 8 at 19-27; D.I. 22 at 27-35); (2) the State violated *Brady v. Maryland* ("*Brady*") by failing to disclose evidence of the OCME misconduct prior to Petitioner's trial (D.I. 8 at 27-35; D.I. 22 at 36-50); and (3) the administrative search of Petitioner's residence violated the Fourth Amendment (D.I. 8 at 35-38; D.I. 22 at 51-54).

### A.   <u>Claim One:  Ineffective Assistance of Counsel</u>

The Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence." U.S. Const. amend. VI. The Supreme Court has recognized various categories of claims concerning the right to the assistance of counsel, including: (1) the ineffective assistance of counsel ("ineffectiveness claims"), *see Strickland*, 466 U.S. at 688; (2) the violation of a defendant's autonomy to decide the objectives of his defense ("autonomy claims"), *see McCoy v. Louisiana*, 138 S. Ct. 1500, 1508 (2008); and (3) the complete deprivation of the assistance of counsel ("deprivation claims"), *see United States v. Cronic*, 466 U.S. 648, 659 (1984). The main difference between these three categories is whether the petitioner must demonstrate prejudice in order to prevail.

As a general rule, ineffective assistance of counsel claims are reviewed pursuant to the two-pronged standard established in *Strickland v. Washington*, 466 U.S. 668 (1984). Under the first *Strickland* prong, the petitioner must demonstrate that "counsel's representation fell below an objective standard of reasonableness," with reasonableness being judged under professional norms prevailing at the time counsel rendered assistance. *Strickland*, 466 U.S. at 688. The second *Strickland* prong requires the petitioner to demonstrate "there is a reasonable probability that, but for counsel's error the result would have been different." *Id*. at 687–96. A reasonable probability

is a "probability sufficient to undermine confidence in the outcome." *Id*. at 688.  A petitioner must make concrete allegations of actual prejudice and substantiate them or risk summary dismissal. *See Wells v. Petsock*, 941 F.2d 253, 259-60 (3d Cir. 1991); *Dooley v. Petsock*, 816 F.2d 885, 891-92 (3d Cir. 1987).   A court can choose to address the prejudice prong before the deficient performance prong, and reject an ineffective assistance of counsel claim solely on the ground that the defendant was not prejudiced.  *See Strickland,* 466 U.S. at 698.  Although not insurmountable, the *Strickland* standard is highly demanding and leads to a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689.  Finally, claims alleging ineffective assistance of appellate counsel are evaluated under the same *Strickland* standard applicable to trial counsel.  *See Lewis v. Johnson*, 359 F.3d 646, 656 (3d Cir. 2004).  An attorney's decision about which issues to raise on appeal are strategic,[2] and an attorney is not required to raise every possible non-frivolous issue on appeal.  *See Jones v. Barnes*, 463 U.S. 745 (1983); *Smith v. Robbins*, 528 U.S. 259, 272 (2000).

In *McCoy v. Louisiana*, the Supreme Court held that defense counsel's concession of his client's guilt in order to avoid the death penalty violated the defendant's right to autonomy. *See McCoy*, 138 S.Ct. at 1503 (the "Sixth Amendment guarantees a defendant the right to choose the objective of his defense and to insist that his counsel refrain from admitting guilt, even when counsel's experience-based view is that confessing guilt offers the defendant the best chance to avoid the death penalty.").  Autonomy claims are premised on violations of a defendant's "right to make the fundamental choices about his own defense." *McCoy*, 138 S. Ct. at 1511.  The "right to defend" granted to the defendant "personally" in the Sixth Amendment protects not only his right

---

[2]        *See Albrecht v. Horn*, 485 F.3d 103, 138 (3d Cir. 2007); *Buehl v. Vaughn*, 166 F.3d 163, 174 (3d Cir. 1999) (counsel is afforded reasonable selectivity in deciding which claims to raise without the specter of being labeled ineffective).

to self-representation, *see Faretta v. California*, 422 U.S. 806, 834 (1975), but also ensures that if the defendant chooses to be represented by counsel he retains the "[a]utonomy to decide . . . the objective of the defense." *McCoy*, 138 S. Ct. at 1508.  A represented defendant surrenders control to counsel over tactical decisions at trial while retaining the right to be the "master" of his own defense. *See id.; Faretta*, 422 U.S. at 820.  Although counsel makes decisions concerning matters of trial management, such as "the objections to make, the witnesses to call, and the arguments to advance," *Gonzalez v. United States*, 553 U.S. 242, 249 (2008), the defendant has "the ultimate authority to make certain fundamental decisions regarding the case." *Jones v. Barnes*, 463 U.S. 745, 751 (1983).  Fundamental decisions "are not strategic choices about how best to achieve a client's objectives; they are choices about what the client's objectives in fact are." *McCoy*, 138 S. Ct. at 1508.  Autonomous decisions that are reserved exclusively for defendant include whether to plead guilty, waive the right to a jury trial, testify in one's own behalf, take an appeal, and admit guilt of a charged crime. *See id.; Jones*, 463 U.S. at 751.  The *McCoy* court further held that it is structural error for an attorney to proceed with that strategy over the defendant's objections entitling the defendant to a new trial without requiring a demonstration of prejudice. *Id*. at 1511. As explained by the Third Circuit:

> [I]n *McCoy v. Louisiana*, the Supreme Court clarified the line between tactical and fundamental decisions.  On the one hand, **"strategic choices about how best to *achieve* a client's objectives"** are decisions for lawyers, so we review them for ineffectiveness.  On the other hand, **"choices about what the client's objectives in fact *are*"** belong to defendants themselves, and violating defendant's right to make those choices is structural error.

*United States v. Wilson*, 960 F.3d 136, 143 (3d Cir. 2020) (emphasis in original).

Finally, in *United States v. Cronic*, the United States Supreme Court articulated a limited exception to *Strickland*'s requirement that a petitioner must demonstrate both deficient

performance and prejudice in order to prevail on an ineffective assistance of counsel claim, holding that there are three situations in which prejudice caused by an attorney's performance will be presumed: where the defendant is completely denied counsel at a critical stage; where "counsel entirely fails to subject the prosecution's case to meaningful adversarial testing;" or where the circumstances are such that there is an extremely small likelihood that even a competent attorney could provide effective assistance, such as when the opportunity for cross-examination has been eliminated. *See Cronic*, 466 U.S. at 659 & n.25.  The *Cronic* presumption of prejudice only applies when counsel has completely failed to test the prosecution's case throughout the entire proceeding. *See Bell*, 535 U.S. at 697.  This presumption of prejudice is sometimes referred to as "*per se*" ineffective assistance of counsel.  *See Thomas*, 750 F.3d at 113 n.3.

In his Rule 61 motion, Petitioner presented Claim One as an ineffective assistance of counsel claim vaguely premised on the violation of his right to autonomy, and argued that prejudice should be presumed and defense counsel's actions constituted a structural error under *Cronic*. (D.I. 22-8 at 84-90).  Petitioner also argued that defense counsel's actions amounted to ineffective assistance under *Strickland*.  (D.I. 22-8 at 87-92).  The Superior Court denied Claim One after applying the *Strickland* standard without any mention of Petitioner's *Cronic* argument.  On post-conviction appeal, Petitioner presented Claim One as an ineffective assistance of counsel claim explicitly premised on the violation of his right to autonomy, and argued that prejudice should be presumed because defense counsel's actions constituted a structural error under *McCoy*.  (D.I. 22-9 at 60-66).  Petitioner also argued that defense counsel's actions amounted to ineffective assistance under *Strickland*.  The Delaware  Supreme Court affirmed the Superior Court's denial of Claim One after applying *Strickland*, without any mention of Petitioner's *McCoy* argument.

In Claim One of this proceeding, Petitioner contends that defense counsel provided ineffective assistance by stipulating to the State's evidence without his consent, "thereby conceding elements of the offenses and undermining [Petitioner's] due process right to a fair trial and to meaningfully oppose the prosecution's case." (D.I. 8 at 19; D.I. 22 at 27). He asserts that the Delaware state courts unreasonably determined the facts and unreasonably applied clearly established federal law by finding that Petitioner's voluntary waiver of a jury trial and his consent to a bench trial meant that he waived his right to contest the State's evidence and to meaningfully oppose the prosecution's case. (D.I. 8 at 20). In addition, Petitioner contends that the Delaware Supreme Court unreasonably failed to apply *McCoy* to his argument that defense counsel violated Petitioner's right to autonomy and, therefore, unreasonably failed to presume he was prejudiced by defense counsel's stipulation to the State's evidence. (D.I. 8 at 22-25).

As an initial matter, the Court must determine the appropriate standard of review for Claim One. Both the Superior Court and the Delaware Supreme Court adjudicated the merits of Petitioner's ineffective assistance of counsel argument, but the Delaware Supreme Court did not adjudicate the merits of Petitioner's *McCoy*/autonomy argument. In turn, Petitioner challenges both of the state courts' underlying factual determination that he consented to defense counsel's stipulation. Given these circumstances, the Court must: (1) determine whether the Delaware state courts' factual determination that Petitioner knowing, intelligently, and voluntarily agreed to stipulate to the State's drug evidence is presumptively correct (*i.e.*, has Petitioner provided clear and convincing evidence to rebut that presumption); (2) review Petitioner's *McCoy* argument *de novo*; and (3) review his *Strickland* argument under the deferential standard of § 2254(d).

The starting point for the Court's analysis is the Delaware Supreme Court's reason for denying Claim One:

Here, [Petitioner] has alleged that his trial counsel was ineffective for stipulating to the State's drug evidence, but, as the Superior Court correctly decided, he cannot show prejudice by counsel's errors. As the Superior Court held, it is unlikely trial counsel would have achieved anything by contesting the drug evidence. [Petitioner] knowingly, intelligently, and voluntarily agreed to stipulate to the State's drug evidence. The evidence of [Petitioner's] guilt was also overwhelming. [Petitioner] confessed to flushing cocaine down the toilet, and the drugs were seized from his room while he was present. Thus, [Petitioner's] *Strickland* claim fails.

*Burton*, 2018 WL 6824636, at *2.

### 1.    <u>Voluntary, knowing, and intelligent consent to stipulate</u>

Petitioner contends that the Delaware Supreme Court unreasonably determined the facts by concluding that he voluntarily, knowingly, and intelligently agreed to stipulate to the State's drug evidence because: (1) defense counsel did not obtain Petitioner's consent before stipulating to the evidence from the suppression hearing; and (2) the transcript of the bench trial reveals that the trial judge did not "mention [] a stipulated bench trial in which the prosecution's evidence would not be contested." (D.I. 8 at 19-20). The Court acknowledges that the issue concerning the voluntariness of Petitioner's waiver of his right to challenge the evidence is independent of the *McCoy* and *Strickland* issues concerning defense counsel's actions. *See Eichinger v. Wetzel*, 2019 WL 248977, at *11 (E.D. Pa. Jan. 16, 2019). Nevertheless, because the Delaware Supreme Court premised part of its absence-of-*Strickland*-prejudice conclusion on its determination that Petitioner voluntarily and knowingly consented to the stipulation, the Court finds it necessary to address the Delaware Supreme Court's factual determination of voluntariness.

The record reveals the following facts. On the day scheduled for trial, defense counsel advised the Superior Court that Petitioner had elected to waive his right to a jury trial and had executed a waiver of jury trial form. (D.I. 17-12 at 59, 61). Defense counsel explained that Petitioner made this decision after two meetings during which defense counsel discussed the nature

of a stipulated bench trial.  (D.I. 17-12 at 61).   Defense counsel then entered the following

stipulation in front of the Superior Court, Petitioner, and the State:

> [I]n this case it's our belief that the suppression issue is really the
> most important issue [. . .] and that there was a pretty thorough
> record made before Judge Rapposelli that we're willing to rely upon
> for the suppression purpose.  And that for purposes of a trial today,
> we'll rely upon that record, plus the additional record that the State
> will make with respect to where the drugs were found and what they
> were and how much was found.

(D.I. 22-3 at 112).  Immediately following defense counsel's statement, the trial judge engaged

Petitioner in a colloquy concerning his waiver of a jury trial and his decision to proceed with a

bench trial.  (D.I. 22-3 at 23-24).  Petitioner stated that he had consulted with defense counsel

regarding his decision and did not wish to discuss it any further with counsel.  (D.I. 22-3 at 24).

The trial judge concluded that Petitioner's waiver of a jury trial was knowing and voluntary.  (*Id*.).

The trial judge did not specifically mention the stipulation during this colloquy.  (*Id*.).

The bench trial proceeded, and the State admitted into evidence, without objection, the

OCME's lab report, which confirmed that the substances found in Petitioner's room were cocaine

and marijuana.  (*Id*. at 25).  The State presented Detective Leary as a witness, who described where

the drugs and paraphernalia were found and explained the basis for his opinion that Petitioner had

those items for drug dealing.  (*Id*. at 25-26).  Defense counsel cross-examined Detective Leary

about the "elements necessary to popcorn some crack cocaine."  (*Id*. at 26).  After the State rested

its case, the trial judge asked if there was anything else, to which the State replied, "The State has

no argument since it's a stipulated trial."  (*Id*.).

In his Rule 61 proceeding, Petitioner "acknowledge[d] that" he and defense counsel

discussed "the importance of the suppression issue and the possibility of choosing a bench trial,"

but "denie[d] ever discussing any possible stipulation to the State's record."  (D.I. 22-8 at 82).  In

his responsive Rule 61 affidavit, defense counsel denied that he stipulated to the State's evidence

without Petitioner's knowledge or consent, explaining:

> The [Public Defender's] database reflects that I went to the prison
> on September 23, 2013, and "discussed plea offer and prospects for
> appeal for suppression issue".  Based on that data entry, I can only
> assume that I explained to [Petitioner] that the most expeditious way
> to preserve an appellate issue was to conduct a bench trial and allow
> the Court to rely upon much of the record developed at the client's
> suppression hearing in August [2013]. It would have been my
> practice to explain to the client that, at such a stipulated bench trial,
> the allegations of the police officers would largely go unchallenged
> in cross-examination, because the controlled substance at issue was
> clearly found in the living space of the defendant (which he shared
> with no one else) and I had no good faith reason, based on the record
> as I understood it, to challenge the findings of the Medical
> Examiner's Office concerning the type and amount of controlled
> substance involved in the case.  Keep in mind that the OCME
> scandal with respect to stealing drugs and dry-labbing tests had not
> been exposed.  Prior to going into court, I had the defendant execute
> a waiver of his right to a jury trial and probably conducted some
> explanation as to how the trial would proceed before [the trial
> judge].

(D.I. 17-14 at 175-76).  Based on this record, the Superior Court implicitly, and the Delaware

Supreme Court explicitly, concluded that Petitioner "knowingly, intelligently, and voluntarily

agreed to stipulate to the State's drug evidence."  *Burton*, 2018 WL 6824636, at *2.  *See also*

*Burton*, 2018 WL 2077325, at *4.

After reviewing the record, the Court finds that the Delaware state courts[3] reasonably

determined the facts in light of the evidence presented when concluding that Petitioner knowingly,

---

[3]     The Delaware Supreme Court relied on the Superior Court's reasoning when denying
Petitioner's ineffective assistance of counsel argument.  Therefore, although the Court will
primarily refer to the Delaware Supreme Court's decision when reviewing Claim, there are
times the Court will refer to both decisions.  *See Wilson v. Sellers*, 138 S. Ct. 1188, 1193-
94 (2018) (reiterating that when a higher court affirms a lower court's judgment without
an opinion or other explanation, federal habeas law employs a "look through" presumption
and assumes that the later unexplained order upholding a lower court's reasoned judgment
rests upon the same grounds as the lower court judgment); *Y1st v. Nunnemaker*, 501 U.S.

intelligently, and voluntarily agreed to stipulate to the State's drug evidence. At the beginning of the bench trial, defense counsel specifically stated that the defense was stipulating to the State's evidence from the suppression hearing. During the colloquy that ensued between the trial judge and Petitioner, Petitioner did not indicate that he did not understand the stipulation, that counsel had misinformed him, or that counsel had misstated his decision. Rather, Petitioner explicitly acknowledged that the final decision to proceed via a bench trial belonged to him. Additionally, Petitioner did not challenge the voluntariness of his stipulation to the State's evidence in his motion for new trial or on direct appeal.

Moreover, when reviewing Petitioner's allegation that he did not consent to the stipulation and defense counsel's response to that allegation, it was reasonable for the Delaware state courts to find defense counsel's Rule 61 response to be more credible than Petitioner's unsubstantiated assertion that there was no discussion of stipulating to the State's record. Thus, Petitioner's unsupported assertion – presented in hindsight – that he did not consent to entering the stipulation does not rebut the presumption of correctness applied to the Delaware state courts' factual findings. *Cf. Campbell*, 209 F.3d at 291 (finding that because a reasonable fact-finder could discount petitioner's testimony and credit trial counsel's, the state court did not make an unreasonable determination of the facts in light of the evidence presented when it implicitly reached that conclusion); *United States v. Williams*, 403 F. App'x 707, 708 (3d Cir. 2010) (noting there was no evidence in the record that the defendant dissented from his counsel's stipulation to the admissibility of the laboratory evidence before or during trial). *See Vickers v. Sup't Graterford*

---

797, 804 (1991) (under the "look through" doctrine, "where there has been one reasoned state judgment rejecting a federal claim, later unexplained orders upholding that judgment or rejecting the same claim rest upon the same ground.").

*SCI*, 858 F.3d 841, 850 n.9 (3d Cir. 2017) (noting credibility findings are presumed correct absent clear and convincing evidence to the contrary).

In turn, although not a factual issue, the Court also rejects Petitioner's related argument that the Delaware state courts unreasonably concluded he had consented to the stipulation because the trial judge did not "mention [] a stipulated bench trial in which the prosecution's evidence would not be contested" during the colloquy concerning Petitioner's waiver of a jury trial.  (D.I. 8 at 19-20).  Petitioner does not identify, and the Court has not found, any Supreme Court precedent requiring a colloquy before a defendant agrees to a stipulated bench trial.  The United States Supreme Court has consistently held that "it is not an unreasonable application of clearly established Federal law for a state court to decline to apply a specific legal rule that has not been squarely established by [it]."  *Knowles v. Mirzayance*, 556 U.S. 111, 122 (2009).  *See Wright v. Van Patten*, 552 U.S. 120, 126 (2008) ("Because our cases give no clear answer to the question presented, . . . it cannot be said that the state court unreasonabl[y] appli[ed] clearly established Federal law.").  Consequently, the trial judge's failure to specifically address the issue of the stipulation during the colloquy regarding Petitioner's waiver of a jury trial does not, on its own, demonstrate that Petitioner did not knowingly, intelligently, and voluntarily stipulate to the State's drug evidence.

In sum, the record reflects that Petitioner understood he was waiving his right to a jury trial and stipulating to the State's drug evidence, and that he only objected to defense counsel's strategy of stipulating to the State's evidence after the verdict.  Given Petitioner's failure to provide clear and convincing evidence to the contrary, the Court defers to the Delawares state courts' factual finding that Petitioner consented to defense counsel's stipulation.

## 2.   Violation of Petitioner's autonomy under *McCoy*

Citing *McCoy*, Petitioner contends that defense counsel's stipulation to the State's evidence conceded "all elements of the State's case but for possession and possession with intent to manufacture or distribute" and "undermin[ed] [his] due process right to a fair trial and to meaningfully oppos[e] the prosecution's case." (D.I 22 at 27-28). Petitioner asserts he "never wanted or expected Trial Counsel to relieve the State of its constitutional burden to prove each element of the offenses beyond a reasonable doubt, and Trial Counsel violated [Petitioner's] constitutional right by overriding the objectives of the defense as decided by [Petitioner]." (D.I. 22 at 29)

Assuming, *arguendo*, that the right of client autonomy acknowledged in *McCoy* is retroactively applicable to Petitioner's case, Petitioner's instant argument is unavailing because the facts of his case are distinguishable from those in *McCoy*. In *McCoy,* a capital case, defense counsel conceded McCoy's factual guilt with the hope of securing a life sentence despite McCoy's goal of obtaining an acquittal. McCoy objected and testified on his own behalf that he was innocent. *See McCoy*, 138 S.Ct. at 1506-07. In this non-capital case, Petitioner actually acknowledges that defense counsel never admitted that Petitioner was guilty of the charged offenses.[4] (D.I. 22 at 56). Also, during the bench trial, Petitioner never voiced any opposition to defense counsel's decision to stipulate to the State's evidence. *Cf. Wilson*, 960 F.3d at 144 (distinguishing *McCoy* because there was no evidence that the defendant either objected to the stipulation or demanded that counsel not concede the element of the crime). Petitioner's failure to

---

[4]    Instead, Petitioner contends that, "[b]ased upon the offenses with which he was charged and the statutory elements required to be proven beyond a reasonable doubt, [defense counsel's] decision to stipulate to the State's evidence conceded all elements of the State's case but for possession and possession with intent to manufacture or distribute." (D.I. 22 at 28-29).

contest the stipulation in his motion for new trial or on direct appeal – where he specifically challenged the drug evidence – provides further support for finding that Petitioner did not oppose the stipulation at the time it was entered.

As the Supreme Court explained in *Florida v. Nixon*:

> When counsel informs the defendant of the strategy counsel believes to be in the defendant's best interest and the defendant is unresponsive, counsel's strategic choice is not impeded by any blanket rule demanding the defendant's explicit consent. Instead, if counsel's strategy, given the evidence bearing on the defendant's guilt, satisfies the *Strickland* standard, that is the end of the matter; no tenable claim of ineffective assistance would remain.

543 U.S. 175, 190-92 (2004). Significantly, the *McCoy* Court distinguished McCoy's case from the circumstances in *Nixon*, stating:

> In *Florida v. Nixon*, this Court considered whether the Constitution bars defense counsel from conceding a capital defendant's guilt at trial "when [the] defendant, informed by counsel, neither consents nor objects." In that case, defense counsel had several times explained to the defendant a proposed guilt-phase concession strategy, but the defendant was unresponsive. We held that when counsel confers with the defendant and the defendant remains silent, neither approving nor protesting counsel's proposed concession strategy, "[no] blanket rule demand[s] the defendant's explicit consent" to implementation of that strategy.

*McCoy*, 138 S. Ct. at 1505. Thus, Petitioner's case is not one of structural error under *McCoy*, where defense counsel refuses to defer to his client's explicit assertion that he wishes to argue his innocence, but rather, a case where defense counsel's decision to stipulate to the State's evidence should be assessed under *Strickland*.

**3.    Ineffective assistance of counsel under *Strickland***

Acknowledging the possibility that the Court might reject his *McCoy* argument, Petitioner also contends that, pursuant to § 2254(d)(1), the Delaware state courts unreasonably applied the

17

*Strickland* standard to the facts of his case by concluding that he did not establish prejudice.[5] When performing the "reasonable application" portion of the § 2254(d)(1) inquiry, the Court must review the Delaware state court decisions with respect to Petitioner's ineffective assistance of counsel claim through a "doubly deferential" lens.[6]  *See Richter*, 562 U.S. at 105.  Notably, when § 2254(d)(1) applies, "the question is not whether counsel's actions were reasonable, [but rather], whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Id*.  When assessing prejudice under *Strickland*, the question is "whether it is reasonably likely the result would have been different" but for counsel's performance, and the "likelihood of a different result must be substantial, not just conceivable."  *Id*.  And finally, when viewing a state court's determination that a *Strickland* claim lacks merit through the lens of § 2254(d), federal habeas relief is precluded "so long as fairminded jurists could disagree on the correctness of the state court's decision."  *Id*. at 101.

Petitioner contends that "the state courts unreasonably applied *Strickland* to the facts of this case" by concluding that the "overwhelming evidence" of his guilt precluded him from establishing the prejudice.  (D.I. 8 at 26; D.I. 26 at 10).  He argues that the "overwhelming evidence" was only admissible because "defense counsel's stipulation included consent to rely

---

[5]    Petitioner does not contend – and it is clearly not the case – that the Delaware state court decisions were contrary to *Strickland*.  Therefore, the Court focuses on the "unreasonable application" portion of the § 2254(d)(1) inquiry.

[6]    As explained by the *Richter* Court,
> [t]he standards created by *Strickland* and § 2254(d) are both "highly deferential," and when the two apply in tandem, review is doubly so.  The *Strickland* standard is a general one, so the range of reasonable applications is substantial.  Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d).

*Richter*, 562 U.S. at 105 (internal citations omitted).

upon the lengthy record made at the suppression hearing for purposes of trial, numerous pages of factual testimony that would have been otherwise inadmissible at trial, such as the fact that [Petitioner] was on probation and that he was identified by a confidential informant alleging that [Petitioner] was selling crack cocaine out of his residence, were in fact admitted." (D.I. 8 at 26). Petitioner's argument, however, ignores the fact that the overwhelming evidence to which the Delaware Supreme Court referred was Petitioner's confession to flushing cocaine down the toilet and the fact that the drugs were seized from Petitioner's room while he was present. *See Burton*, 2018 WL 6824636, at *2. This evidence would have been admissible without the stipulation because the trial court denied Petitioner's motion to suppress.

Petitioner also argues that, "regardless of how allegedly overwhelming the evidence was against" him, Petitioner was prejudiced because "he was denied a new trial and/or re-testing of the alleged drug" after OCME misconduct was discovered "due to [defense counsel] stipulation to the drug evidence and the chain of custody." (D.I. 26 at 10). It is well-established that, when applying *Strickland*, the Court is required to evaluate defense counsel's performance in light of the facts and circumstances known/knowable to defense counsel at that time. *See Strickland*, 466 U.S. at 689 ("[E]very effort [must] be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time."). Here, defense counsel entered the stipulation on September 24, 2013, and the misconduct at the OCME was not discovered until February 2014. As defense counsel was unaware of the OCME misconduct at the time of the stipulation, the fact that the Delaware state courts relied, in part, on the existence of the stipulated facts to deny Petitioner's motion for new trial, re-testing cannot be factored into the prejudice determination. In sum, Petitioner's

arguments fail to show a reasonable probability that, but for the stipulation, the outcome of his bench trial would have been different.

Based on the foregoing, the Court concludes that the Delaware state courts reasonably reviewed Claim One as a standard ineffective assistance of counsel claim under *Strickland* rather than as violation of autonomy claim under *McCoy*. In turn, the Delaware state courts reasonably applied *Strickland* in concluding that Petitioner was not prejudiced by defense counsel's stipulation and, therefore, defense counsel did not provide constitutionally ineffective assistance. Accordingly, the Court will deny Claim One.[7]

### B.    **Claim Two: *Brady* Violation**

In Claim Two, Petitioner contends that the Delaware state courts "erroneously concluded that the State's *Brady* violation did not entitle [Petitioner] to a new trial or postconviction relief." (D.I. 8 at 27). According to Petitioner, the State violated *Brady* by not disclosing the "exculpatory and impeachment information regarding the OCME employees and the reliability of the OCME's work product" before he entered his stipulated bench trial. (D.I. 8 at 28). The following history

---

[7]     Additionally, although the Delaware Supreme Court did not address the performance prong of the *Strickland* standard, the Superior Court held that defense counsel's strategic decision to "rely on the record developed at the suppression hearing in order to preserve that issue for appeal by proceeding with a bench trial" was "representative of rational professional judgment and thus reasonable." *Burton*, 2018 WL 2077325, at *4. Petitioner contends the Superior Court unreasonably applied *Strickland* in reaching this conclusion, because the stipulation was unnecessary to preserve the appellate issue and provided Petitioner with no benefit. The Court is not persuaded. "Trial management is the lawyer's province: Counsel provides his or her assistance by making decisions such as what arguments to pursue, what evidentiary objections to raise, and what agreements to conclude regarding the admission of evidence." *McCoy*, 138 S.Ct. at 1508 (cleaned up). *See United States v. Benoit*, 545 F. App'x 171, 174 (3d Cir. 2013) ("[D]efense counsel has the ultimate authority to decide issues concerning what evidence should be introduced [and] what stipulations should be made."). In turn, "[u]nder [the *Strickland*] standard, ineffectiveness will not be found based on a tactical decision which had a reasonable basis designed to serve the defendants in interests." *Werts v. Vaughn*, 228 F.3d 178, 190 (3d Cir. 2000). At the time defense counsel made the decision to stipulate in order to preserve the suppression issue on appeal, the decision was a reasonable strategy.

is relevant to the Court's analysis of the instant argument.  In his Rule 33 motion, Petitioner argued he should be granted a new trial because the State violated *Brady* by failing to disclose the irregularities in the handling of drug evidence at the OCME before his trial.  (D.I. 17-29 at 1-20). The Superior Court denied Petitioner's motion for new trial without explicitly addressing whether the State's failure to disclose the OCME misconduct amounted to a *Brady* violation.  (D.I. 17-29 at 46-55).  Instead, the Superior Court denied the motion for new trial because Petitioner could not satisfy the bright-line rule established in *State v. Irwin*, 2014 WL 6734821 (Del. 18, 2014) for determining what circumstances must exist in a case before allowing questioning regarding the OCME investigation in that case at trial.[8]  (D.I. 17-29 at 49-54).  Petitioner appealed.  The Delaware Supreme Court affirmed the Superior Court's denial of the motion for new trial on the basis of several of the Superior Court's prior decisions in other cases which "addressed and rejected" the same argument for new trial.  *See Burton*, 2016 WL 3381847, at *1 n.1.  The cases cited by the Delaware Supreme Court also applied *Irwin*'s bright-line rule without addressing the substance of the defendants' *Brady* arguments.

In his Rule 61 motion, Petitioner argued that the State violated *Brady* by failing to turn over the information about the problems at the OCME.  (D.I. 17-25 at 34-70).  The argument was essentially the same as the one he raised in his Rule 33 motion for new trial, except he included evidence of additional violations that had come to light since the filing of his motion for new trial,

---

[8]    The Superior Court explained that,

> [i]n *Irwin*, the [Delaware Supreme] Court set forth a bright line that a defendant will only be allowed to present evidence or question State's witnesses regarding the OCME investigation only if there is a discrepancy in weight, volume or contents from what is described by the seizing officer.  In *Irwin*, the [Delaware Supreme] Court acknowledges that discrepancy in weight due to a multitude of factors is not uncommon.

*Burton*, 2018 WL 2077325, at *2.

along with the report of Joseph Bono, a Forensic Science Consultant he had retained.  (D.I. 17-25 at 45-48).  Petitioner also provided emails from 2007 and 2010, which, he asserted, proved that there were police officers who would have been aware of the problems at the OCME prior to 2014. (D.I. 17-25 at 52).  The Superior Court found that the *Brady* claim was procedurally barred, but held that it met the criteria for the Rule 61(i)(5) exception to the procedural bar and denied it on the merits after explicitly applying *Brady*.  *See Burton*, 2018 WL 2077325, at *2-3.  On post-conviction appeal, the Delaware Supreme Court found that the Superior Court had applied the wrong version of Rule 61.  *See Burton*, 2018 WL 6824636, at *1-2.  The Delaware Supreme Court further concluded that the claim was procedurally barred as formerly adjudicated under Rule 61(i)(4), and that it did not meet the criteria for the Rule 61(i)(5) exception under the correct version of Rule 61.  *See id.*

Although a formerly adjudicated claim barred by Rule 61(i)(4) is defaulted for Delaware state court purposes, for the purposes of federal habeas review, the fact that the Delaware Supreme Court found the instant Claim barred for being formerly adjudicated means that it was decided on the merits and should be reviewed under the deferential AEDPA standard contained in § 2244(d)(1).  *See Trice v. Pierce*, 2016 WL 2771123, at *4 n.4 (D. Del. May 13, 2016).  The "former adjudication" in this case is the Superior Court's denial of Petitioner's Rule 33 motion and the Delaware Supreme Court's affirmance of that decision.  But, as previously explained, those decisions denied Petitioner's motion for new trial after applying the threshold test established in *Irwin*, which means that the Delaware state courts never addressed the merits of Petitioner's *Brady* argument.  Given these circumstances, the Court concludes that it must review Claim Two *de novo*.

Pursuant to the due process clause of the Fourteenth Amendment, the government must disclose evidence favorable to an accused "where the evidence is material either to guilt or to

punishment, irrespective of the good faith or bad faith of the prosecution." *Brady*, 373 U.S. at 87. "[T]he duty to disclose [*Brady*] evidence is applicable even though there has been no request by the accused . . . and . . . the duty encompasses impeachment evidence as well as exculpatory evidence." *Strickler v. Greene*, 527 U.S. 263, 281-82 (1999).  Thus, the government's obligation under *Brady* to disclose exculpatory evidence includes evidence that the defense might use to impeach a government witness by showing bias or interest.  *See United States v. Bagley*, 473 U.S. 667, 676 (1985); *accord Giglio v. United States*, 405 U.S. 150 (1972).  In order to prevail on a *Brady* claim, a petitioner must establish that: (1) the evidence at issue was favorable to the accused, either because it was exculpatory or it had impeachment value; (2) the prosecution suppressed the evidence, "either willfully or inadvertently"; and (3) the evidence was material.  *Strickler*, 527 U.S. at 281-82 (1999); *Lambert v. Blackwell*, 387 F.3d 210, 252 (3d Cir. 2004).  A petitioner demonstrates materiality of the suppressed evidence by showing a "reasonable probability of a different result." *Kyles v. Whitley*, 514 U.S. 419, 434 (1995).  In turn, "a reasonable probability of a different result is accordingly shown when the government's evidentiary suppression undermines confidence in the outcome of the trial." *Id.*  Importantly, "[b]ecause the *Brady* factors are conjunctive, the failure to demonstrate that any of the factors applies to the case at hand will result in a finding that no *Brady* violation occurred." *Livingston v. Att'y Gen. New Jersey*, 797 F. App'x 719, 722 (3d Cir. 2020).

Here, Petitioner has failed to demonstrate that the evidence of the OCME misconduct was material.  First, as recognized by the body of Delaware caselaw and this Court's caselaw concerning the OCME misconduct scandal, "[t]here is no evidence that the OCME staff 'planted' evidence to wrongly obtain convictions.  Rather, the employees who stole the evidence did so because it in fact consisted of illegal narcotics that they could resell or take " *Brown v. State,*

117 A.3d 568, 581 (Del. 2015).  *See also Rust v. DeMatteis*, 2021 WL 965582, at*12-13 (D. Del. Mar. 15, 2021); *Brown v. Metzger*, 2019 WL 12373829, at *8 (D. Del. Mar. 25, 2019).  Second, although there is a .55 gram difference between the reported weights of the white powder and a 0.07 gram difference between the reported weights for the plant substance,[9] these minor discrepancies – on their own – are not the type "that would call into question the evidence seized and tested by the OCME in this case."[10]  (D.I. 22-6 at 70; *see, e.g., Williams v. State,* 141 A.3d 1019, 1029 (Del. 2016) (explaining that "[d]iscrepancies in weight are common"); *State v. McNair*, 2016 WL 424999, at *1 (Del. Super. Ct. Feb. 1, 2016) (describing a .8 gram difference between the preliminary weight of cocaine and the weight listed in the OCME as "a minor deviation or discrepancy" which, given the lack of evidence "to suggest that drug evidence envelopes were opened or tampered," did not satisfy *Irwin*'s bright line rule and, therefore, did not justify a new trial); *Brown v. State*, 117 A.3d 568, 581 (Del. 2015) (explaining that, "the slight discrepancy among the measurements reported by the police (21.2 grams), OCME (23.23 grams), and NMS (22.05 grams) would not have changed the result, and there was thus no prejudice to Brown.")).

Third, the additional evidence of OCME misconduct that Petitioner provides in this case – namely, "the reports and opinions rendered by Joseph Bono, an independent Forensic Science

---

[9]   The police report lists the preliminary weight of the marijuana at 1 gram and the preliminary weight of the cocaine at 29 grams.  (D.I. 17-28 at 15-16).  The OCME lab report lists the weight of the marijuana at .93 grams and the weight of the cocaine at 28.45 grams.  (D.I. 17-28 at 17).

[10]   The Court acknowledges that a  drug weight discrepancy is the focus of *Irwin*'s bright-line rule for determining the circumstances that must exist in a case before allowing questioning regarding the OCME investigation in a particular case.  Nevertheless, the Court is not restricted by the parameters of *Irwin*'s test, because it is reviewing the merits of Petitioner's *Brady* claim.

Consultant who was retained by Petitioner's post-conviction counsel"[11] (D.I. 22 at 39), various emails between the OCME and the New Castle County Police Department, as well as misconduct involving Forensic Chemists Irshad Bajwa (the chemist in this case), Bipin Mody, and Patricia Phillips that resulted in their termination/resignation from the OCME – does not demonstrate or warrant an inference that any actual evidence tampering occurred in his own case.  Mr. Bono's reports and the emails identified by Petitioner are mostly irrelevant to his case and none of them show that employees were planting drugs to falsify test results, or that law enforcement was aware of systemic and potentially criminal problems at the OCME before 2014.  (D.I. 17-13 at 182-84, 188-89; D.I. 22-7 at 24-25).  Moreover, the incidents involving Bajwa, Mody, and Phillips occurred after Petitioner's bench trial.[12]  Thus, given the generic quality and tenuous connection between the aforementioned evidence of the OCME misconduct at issue here and Petitioner's case, the Court concludes that Petitioner has failed to demonstrate a reasonable probability that the outcome of his trial would have been different had Petitioner's evidence of OCME misconduct been disclosed to him prior to his trial.

The following substantial evidence of Petitioner's guilt creates an additional hurdle to demonstrating the materiality of the OCME misconduct: (1) Petitioner's statement to police upon

---

[11]     In his reports, Mr. Bono opined that: (1) the "OCME practices violated forensic quality standards which in turn diminished the integrity of the chain of custody of evidence stored at the OCME and the testing of evidence by the OCME"; and (2) the OCME's failures "to comply with accreditation and testing standards [. . .] could have resulted in the OCME's accreditation being suspended or being placed on probation."  (D.I. 22 at 39).

[12]     Mr. Bajwa was placed on administrative leave in October 2015 for reasons unrelated to Petitioner's case.  (D.I. 17-13 at 4-6, 136).  Mr. Mody was placed on administrative leave in January 2016 and, after reviewing his personnel file, the Superior Court noted in another case that the problems occurred mostly in 2015.  (D.I. 17-14 at 3-5, 7-17).  The events leading to Ms. Phillips' suspension and resignation began in October 2014.  *See Anzara Brown*, 117 A.3d at 575.

his arrest that he had "flushed all his cocaine" prior to officers seeing him exit the bathroom in his residence (D.I. 17-7 at 19); (2) Detective Leary's testimony that, when he searched Petitioner's room, he recovered three plastic bags – one containing 28.45 grams of cocaine and two bags containing marijuana (D.I. 17-7 at 103); (3) the substances found in Petitioner's room field tested positive for cocaine and marijuana (D.I. 17-7 at 80); and (4) drug paraphernalia found in Petitioner's room is associated with the preparation of cocaine for later sale (D.I. 17-7at 103-04). After viewing the nature of the OCME misconduct in context with the additional evidence of Petitioner's guilt,[13] the Court concludes that Petitioner cannot demonstrate a reasonable probability that the result of his trial would have been different if the State had disclosed the OCME misconduct prior to his trial.   In other words, no *Brady* violation occurred in this case. Accordingly, the Court will deny Claim Two as meritless.

### C.   Claim Three: Fourth Amendment Suppression Issue

In his final Claim, Petitioner contends that Probation and Parole violated his Fourth Amendment rights by conducting a warrantless administrative search of his residence.  Pursuant to *Stone v. Powell*, 428 U.S. 465, 494 (1976), a federal habeas court cannot review a Fourth Amendment claim if the petitioner had a full and fair opportunity to litigate the claim in the state courts.  *Id.*; *see also Wright v. West*, 505 U.S. 277, 293 (1992).  A petitioner is considered to have had a full and fair opportunity to litigate such claims if the state has an available mechanism for suppressing evidence seized in or tainted by an illegal search or seizure, irrespective of whether

---

[13]   Count One charged Petitioner with drug dealing "20 grams or more of cocaine", Count Two charged Petitioner with aggravated possession of "25 grams or more of cocaine", and Counts Three and Four charge Petitioner with possession of marijuana without any particular weight.  (D.I. 17-5 at 7-8).  The fact that the field tests and the OCME lab report both identified the drugs as cocaine and marijuana, and also listed the drug weight of the cocaine at a significantly greater weight than that which was charged in the indictment (29 grams in the field test and 28.45 grams in the OCME report) also helps to impede Petitioner's ability to satisfy the materiality prong of the *Brady* test.

the petitioner actually availed himself of that mechanism. *See U.S. ex rel. Hickey v. Jeffes*, 571 F.2d 762, 766 (3d Cir. 1980); *Boyd v. Mintz*, 631 F.2d 247, 250 (3d Cir. 1980). Conversely, a petitioner has not had a full and fair opportunity to litigate a Fourth Amendment claim, and therefore, avoids the *Stone* bar, if the state system contains a structural defect that prevented the state court from fully and fairly hearing that Fourth Amendment argument. *See Marshall v. Hendricks*, 307 F.3d 36, 82 (3d Cir. 2002). Significantly, "an erroneous or summary resolution by a state court of a Fourth Amendment claim does not overcome the [*Stone*] bar." *Id.*

In this case, Petitioner filed a motion to suppress the evidence seized from his residence pursuant to Rule 41 of the Delaware Superior Court Rules of Criminal Procedure during the pre-trial stages of his trial. The Superior Court denied that motion after conducting a hearing. *See State v. Burton*, 2013 WL 4852342, at *3 (Del. Super. Ct. Sept. 9, 2013). The Delaware Supreme Court affirmed that decision on direct appeal. *See Burton*, 2016 WL 3381847, at *1.

This record clearly demonstrates that Petitioner was afforded a full and fair opportunity to litigate his Fourth Amendment claim in the Delaware state courts. The fact that Petitioner disagrees with these decisions and/or the reasoning utilized therein is insufficient to overcome the *Stone* bar. Therefore, the Court will deny Petitioner's Fourth Amendment argument as barred by *Stone*.

### D.    <u>Request for Evidentiary Hearing</u>

Petitioner requested an evidentiary hearing in his Rule 61 proceeding, but the Superior Court denied the Rule 61 motion without holding a hearing after determining that no further expansion of the record was necessary. (D.I. 22 at 48). To support his request for an evidentiary hearing in this case, Petitioner asserts that the Delaware state courts denied him: (1) "any and all ability to further develop the factual record," including his request "to question members of the DOJ and former employees of the OCME about their knowledge of the problems at the OCME

27

and whether any communications took place during which the problems at the OCME were discussed"; and (2) "the ability to investigate and compel testimony in relation to the credibility issues of Mr. Bajwa, who was responsible for the analysis of the alleged drug evidence in this case." (*Id.*). Referencing due process, Petitioner requests an evidentiary hearing to allow him "to present witnesses and evidence concerning his *Brady* claim should this Court find that [Petitioner] has not already sufficiently demonstrated the State's *Brady* violation." (*Id.*).

A federal habeas petitioner is not entitled to an evidentiary hearing in most cases. The Supreme Court has explained that "[a]lthough state prisoners may sometimes submit new evidence in federal court, AEDPA's statutory scheme is designed to strongly discourage them from doing so." *Cullen v. Pinholster*, 131 S. Ct. 1388, 1401 (2011). Typically, requests for an evidentiary hearing in a federal habeas proceeding are evaluated under 28 U.S.C. § 2254(e)(2), which provides:

> (2) If the applicant has failed to develop the factual basis of a claim in State court proceedings, the court shall not hold an evidentiary hearing on the claim unless the applicant shows that
>
> > (A) the claim relies on –
> > (i) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or
> > (ii) a factual predicate that could not have been previously discovered through the exercise of due diligence; and
> >
> > (B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

28 U.S.C. § 2254(e)(2).

"In cases where an applicant for federal habeas relief is not barred from obtaining an evidentiary hearing by 28 U.S.C. § 2254(e)(2), the decision to grant such a hearing rests in the

discretion of the district court." *Schriro v. Landrigan*, 550 U.S.465, 468 (2007); *see also* Rule 8 of the Rules Governing Section 2254 Cases in the United States District Courts, 28 U.S.C. foll. § 2254.  When deciding whether to grant a hearing, the "court must consider whether such a hearing could enable an applicant to prove the petition's factual allegations," taking into consideration the "deferential standards prescribed by 28 U.S.C. § 2254." *Schriro*, 550 U.S. at 474.  An evidentiary hearing is not necessary if the issues can be resolved by reference to the record developed in the state courts.  *Id*.

The Court has determined that Petitioner's claims are meritless under § 2254(d)(1) and (2), and Petitioner's assertions do not demonstrate how a hearing would advance his arguments. Therefore, the Court will deny Petitioner's request for an evidentiary hearing.

## IV.   CERTIFICATE OF APPEALABILITY

A district court issuing a final order denying a § 2254 petition must also decide whether to issue a certificate of appealability.  *See* 3d Cir. L.A.R. 22.2 (2011); 28 U.S.C. § 2253(c)(2).  A certificate of appealability is appropriate when a petitioner makes a "substantial showing of the denial of a constitutional right" by demonstrating "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."  28 U.S.C. § 2253(c)(2); *see also Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

The Court has concluded that the instant Petition does not warrant relief.  Reasonable jurists would not find this conclusion to be debatable.  Accordingly, the Court will not issue a certificate of appealability in this case.

## V.   CONCLUSION

For the reasons discussed, the Court will deny the instant Petition without holding an evidentiary hearing.  The Court will enter an Order consistent with this Memorandum Opinion.